IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


VICK L. JAMES                                            PLAINTIFF


        v.                      CIVIL NO. 07-5079

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                           DEFENDANT

### MEMORANDUM OPINION

Plaintiff Vick L. James brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying his claims for period of disability and disability insurance benefits (DIB) and

supplemental security income (SSI) benefits under the provisions of Title II and XVI of the

Social Security Act (Act).

### Procedural Background:

Plaintiff filed his DIB and SSI applications on July 8, 2004, alleging an inability to work

since April 26, 2004, due to carpal tunnel syndrome, arthritis, hypertension, and heart disease.

(Tr. 49, 226). Plaintiff's applications were denied initially and on reconsideration. Pursuant to

plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on May

23, 2006, at which plaintiff, represented by counsel, appeared and testified. (Tr. 242-277).

By written decision dated September 28, 2006, the ALJ found that plaintiff had an

impairment or combination of impairments that were severe. (Tr. 17). However, after reviewing

all of the evidence presented, he determined that plaintiff's impairments did not meet or equal

the level of severity of any impairment listed in the Listing of Impairments found in Appendix

I, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform the exertional requirements of a light work that did not require rapid or frequent manipulation (Tr. 16-17, 275). With the help of vocational expert testimony, the ALJ found plaintiff could perform other work as a cashier II, a machine setter/tender and a fast food worker. (Tr. 17-18, 275-276).

Plaintiff appealed the decision of the ALJ to the Appeals Council. After reviewing medical evidence submitted by plaintiff, the Appeals Council denied plaintiff's request for review of the hearing decision on February 16, 2007. (Tr. 4-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. # 6, 7).

**Evidence Presented:**

At the administrative hearing on May 23, 2006, plaintiff was fifty-one years of age and obtained a high school education. (Tr. 248-249). The record reflects plaintiff's past relevant work was that of a cabinet maker. (Tr. 250, 256).

The pertinent medical evidence in this case reflects the following. Medical records prior to the relevant time period indicate plaintiff had a myocardial infarction in 1995. (Tr. 174-222). In January of 2002, Dr. J. Schwarz noted plaintiff's blood pressure was not under control and prescribed medication. (Tr. 125).

On April 21, 2004, plaintiff was seen by Dr. Patty Pettway. (Tr. 139). Plaintiff reported experiencing numbness and tingling in his hands and dropping things for the past six to eight months. Plaintiff also complained of pain in his feet and shoulder blades. Dr. Pettway noted

2

plaintiff had a knot on the great right toe and MP joint bilaterally. Dr. Pettway noted plaintiff had a myocardial infarction in the past but plaintiff reported no problem with his heart. Plaintiff reported that he smoked one package of cigarettes a day and drank an occasional beer. Dr. Pettway noted plaintiff's blood pressure was 190/120. Dr. Pettway ordered a rheumatoid factor and sed rate. She also counseled plaintiff on starting a low fat diet, stopping cigarettes, using his wrists splints at night and gave him Naprolene as an anti-inflammatory.

Progress notes dated April 26, 2004, report plaintiff's blood pressure was still elevated. (Tr. 138).  Dr. Pettway noted she did not see plaintiff but plaintiff's wife told her plaintiff's hands were still bothering him and that they went numb at work which resulted in plaintiff cutting his fingers with a saw. Dr. Pettway indicated she did not want plaintiff to work around heavy machinery or dangerous equipment until she saw him. On April 27th, Dr. Pettway noted she tried to make an appointment with Dr. Bise for testing of plaintiff's hands but plaintiff's wife reported there was no way they could pay for half of the procedure up front so no appointment was scheduled. (Tr. 138).

Progress notes dated April 30, 2004, report plaintiff was feeling better and that his blood pressure had been down with medication. (Tr. 137). Plaintiff reported having discomfort with his feet, and that his hands would go to sleep at times.  Dr. Pettway opined plaintiff wanted disability but plaintiff would have difficulty proving this because he did not have nerve conduction studies and objective clinical testing did not indicate neuropathy. Dr. Pettway noted the Atenolol and Lipitor seem to have helped. She recommended keeping plaintiff off work for another couple of weeks and that she would see him back as needed.

Progress notes dated May 14, 2004, report plaintiff's complaints of being tired and fatigued and having numbness and tingling in his hands if he does any work. (Tr. 136). After examining plaintiff, Dr. Pettway reported she was going to increase plaintiff's Atenolol and would stop Lipitor. She indicated plaintiff was to return in two weeks and should remain off work during that period of time.

Progress notes dated June 9, 2004, report plaintiff's blood pressure was not a lot better. (Tr. 135). Dr. Pettway increased plaintiff's Atenolol dosage.

Progress notes dated June 30, 2004, report plaintiff's hands were still going numb and swelling. (Tr. 135). Dr. Pettway noted plaintiff's TSH was normal but plaintiff's blood pressure was still up. Dr. Pettway diagnosed plaintiff with uncontrolled hypertension and paresthesia, carpal tunnel syndrome. Dr. Pettway added Norvasc and recommended plaintiff return for a follow-up in three weeks.

Progress notes dated July 28, 2004, report plaintiff's great toe was swollen again. (Tr. 134). Dr. Pettway noted she was still trying to get plaintiff nerve conduction studies on his wrists. Regarding plaintiff's toe, Dr. Pettway noted plaintiff had joint effusion, tenderness and erythematous. Dr. Pettway noted plaintiff's thyroid and rheumatoid tests were normal but that she would get an ANA and sed rate. Plaintiff was started on a Prednisone dosepak. Dr. Pettway opined if it was arthritis the dosepak should improve plaintiff's pain. Dr. Pettway noted plaintiff's blood pressure was better but that plaintiff did not have the money to fill his prescription. Dr. Pettway diagnosed plaintiff with hypertension, mono-articular arthritis and carpal tunnel syndrome.

4

On August 17, 2004, plaintiff was seen by Dr. William L. Griggs upon referral of Dr. Pettway. (Tr. 115). Plaintiff reported that his hands had been going to sleep off and on for about a year. Plaintiff also reported experiencing sharp pain in the medial anterior portion of his right foot. Plaintiff reported that due to the severe pain in his hands he had been unable to return to work. Plaintiff's medication consisted of Atenolol. Upon examination, Dr. Griggs noted that a motor examination revealed some mild weakness of grip of both hands. (Tr. 116). Dr. Griggs noted plaintiff had some patchy hypalgesia but nothing that conformed to a nerve distribution. Plaintiff was noted to be exquisitely tender over the medial portion of the right foot. Dr. Griggs observed plaintiff walked with a limp favoring his right foot and that plaintiff had difficulty walking on his tiptoes because of pain. Dr. Griggs noted plaintiff underwent Nerve Conduction Velocities (NCV) studies in both upper extremities and the right leg. (Tr. 117). After reviewing the NCV's, Dr. Griggs opined plaintiff had fairly severe bilateral carpal tunnel syndrome. (Tr. 117-119). Dr. Griggs noted the NCV of the feet and ulnar were normal. Dr. Griggs opined plaintiff had an entrapment neuropathy in both wrists and would need to undergo surgical repair.

Progress notes dated August 31, 2004, report plaintiff was able to get his nerve conduction studies which revealed fairly severe carpal tunnel in both wrists. (Tr. 132). Plaintiff reported his foot was also bothering him a lot. Dr. Pettway reported an x-ray of plaintiff's right foot revealed some erosion of the joint of the first metatarsal. Dr. Pettway referred plaintiff to Dr. Bise for carpal tunnel surgery and to Dr. Schwarz for surgical clearance. Dr. Pettway reported she started plaintiff on an anti-inflammatory for what she thinks was arthritis in his foot.

On September 14, 2004, plaintiff was seen by Dr. Schwarz for a preoperative evaluation. (Tr. 122). Dr. Schwarz noted that since the myocardial infarction in 1995, plaintiff had been

AO72A
(Rev. 8/82)

asymptomatic. Plaintiff denied shortness of breath, chest pain, palpitations, diaphoresis, nausea or vomiting. Dr. Schwarz noted plaintiff maintained "an excellent level of physical activity without difficulty." Plaintiff's medications consisted of Atenolol. After examining plaintiff, Dr. Schwarz noted plaintiff appeared stable from a cardiology standpoint. Dr. Schwarz recommended plaintiff undergo a two-dimensional echocardiographic study for assessment of left ventricular performance and a stress test.

On September 14th, plaintiff was also seen by Dr. Roger N. Bise. (Tr. 170). Dr. Bise reported that nerve conduction studies revealed plaintiff had severe bilateral carpal tunnel syndrome. (Tr. 170). Dr. Bise indicated he discussed the surgical procedure with plaintiff but that due to the severity he could not guarantee any kind of outcome.

On September 23, 2004, plaintiff underwent a stress myocardial perfusion imaging study.(Tr. 120-121). The study indicated no EKG changes suggestive of ischemia. A small fixed perfusion defect involving the anterior wall was suggestive of a scar. There was no evidence of stress induced ischemia. There was normal left ventricular wall motion and the ejection fraction was sixty percent.

Plaintiff underwent a carpal tunnel release of plaintiff's right wrist on September 29, 2004, and his left wrist on October 20, 2004. (Tr. 166, 162).

On November 15, 2004, plaintiff underwent an evaluation performed by Dr. Bradley M. Short. (Tr. 127-129). Plaintiff reported he was taking Atenolol to treat high blood pressure and that he took Lorcet Plus for pain. Plaintiff reported he recently underwent a carpal tunnel release and had had difficulty with handling objects, gripping objects, holding objects due to pain in his hands, and paresthesias in his hands and fingers. Upon examining plaintiff, Dr. Short diagnosed

6

plaintiff with carpal tunnel syndrome bilaterally status post repair with residual discomfort and paresthesias; hypertension; and some component of chronic neuropathic type pain. (Tr. 128). Dr. Short opined plaintiff was able to sit, stand and walk. Dr. Short opined plaintiff would not be able to carry objects weighing any substance for any prolonged period of time. Dr. Short opined plaintiff was not able to handle objects. Dr. Short reported plaintiff's fine and gross motor skills appeared impaired bilaterally and that plaintiff had weakness in his hands. Dr. Short reported plaintiff was able to hear, speak and travel.

Progress notes dated November 18, 2004, report plaintiff had several health problems. (Tr. 131). Dr. Pettway noted she was seeing plaintiff for his hypertension and that plaintiff was taking Atenolol. Dr. Pettway noted plaintiff's reports of aches and pains, a little bit of numbness in the left finger, and some discomfort in the right elbow and neck. Dr. Pettway noted she was adding Norvasc to plaintiff's medications. Dr. Pettway noted plaintiff was trying to get his disability and that she would right a letter on that.

In a letter dated November 22, 2004, Dr. Pettway stated she had seen plaintiff for an eight month period of time. (Tr. 130).  Dr. Pettway indicated plaintiff originally came to her due to numbness and tingling in his hands. Dr. Pettway noted plaintiff had a past history of antherosclerotic vascular disease, hypertension, and hyperlipidemia.. She noted plaintiff also had arthritis and the joints most effected were plaintiff's hands and feet. Dr. Pettway noted plaintiff did not have rheumatoid arthritis. Dr. Pettway noted plaintiff underwent bilateral carpal tunnel release surgeries and continued to have considerable discomfort in his wrist, arms and neck.  Dr. Pettway noted plaintiff's stress test was negative. Dr. Pettway indicated plaintiff could not comment on the future of plaintiff's recovery of the carpal tunnel syndrome but opined it would

7

be a "drawn out process." Dr. Pettway opined that because plaintiff was a carpenter she could see plaintiff needing to undergo restraining in order to be employed.

Progress notes dated November 23, 2004, report plaintiff complained of a lot of symptoms. (Tr. 160). Dr. Bise states "from the looks of his hands and his forearms, I think he is still doing some fairly physical work whether or not this is causing him problems or not I don't know." Dr. Bise opined that the symptoms in plaintiff's elbow, shoulder, and forearm on the dorsum were not carpal tunnel related. Dr. Bise indicated that post nerve conduction studies to document recovery or to rule out any fictitious symptoms may be needed. Dr. Bise reported he gave plaintiff more pain pills and scheduled a follow-up appointment in two weeks.

Progress notes dated December 7, 2004, report plaintiff's continued complaints of discomfort in his hands. Dr. Bise indicated that he prescribed Celebrex and scheduled a follow-up appointment in two weeks. Dr. Bise noted plaintiff was not really eager to return to work.

Progress notes dated December 21, 2004, report plaintiff was still having significant symptoms from his surgery. (Tr. 158). Plaintiff also reported experiencing chest pain every time he took Celebrex. Dr. Bise reported plaintiff's hands were rough and that plaintiff had been doing work. Dr. Bise reported that he would do repeat EMG in three weeks. Dr. Bise noted plaintiff showed "no willingness or eagerness to return to work." Dr. Bise noted plaintiff had severe carpal tunnel syndrome that would take time to recover but that there needed to be clear thought about time off work.

Progress notes dated December 27, 2004, report plaintiff was having a lot of problems with his feet. (Tr. 131). Dr. Pettway noted plaintiff's blood pressure was better. Dr. Pettway noted plaintiff did not have any hot, swollen joints. Plaintiff reported he frequently had problems

8

with both wrists, elbows, neck and feet right side greater than left. Dr. Pettway diagnosed plaintiff with arthritis and tendonitis and recommended a follow-up appointment in six months.

Plaintiff underwent nerve conduction studies on January 11, 2005, that revealed abnormal nerve conduction velocity of both median nerves. (Tr. 156-157). When compared to a previous study done on August 17, 2004, improvement was noted.

Progress notes dated January 18, 2005, report plaintiff was two and a half months postop from carpal tunnel surgery. (Tr. 153). Dr. Bise noted plaintiff still felt he was unable to do anything with his hands. Dr. Bise noted a repeat NCV was still abnormal but showed improvement. Upon examination, Dr. Bise noted plaintiff's scars were soft and well-healed and that plaintiff had full range of motion in all digits. Dr. Bise opined there would be no benefit in plaintiff undergoing therapy. Dr. Bise noted plaintiff reported he did not want to return to work until he was "normal." Dr. Bise noted that he spoke to plaintiff's case manager and felt plaintiff could immediately perform light duty work. Dr. Bise opined that due to the severity of plaintiff's carpal tunnel disease plaintiff may never return to a completely normal situation but plaintiff was in no way unable to work. Plaintiff was to return for a follow-up appointment in one month.

Plaintiff submitted medical records to the Appeals Council. These records are from the River Valley Primary Care Services, Inc. There is an undated letter indicating plaintiff had been a patient for the past few months and opined that plaintiff was unable to work. (Tr. 236). And treatment notes dated November 14, 2006, November 16, 2006, and December 11, 2006. (Tr. 237-241).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

10

AO72A
(Rev. 8/82)

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**<u>Discussion:</u>**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

11

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The bulk of the medical evidence revolves around plaintiff's complaints of numbness and tingling in his wrists and hands.  The medical record shows plaintiff was diagnosed with fairly severe bilateral carpal tunnel syndrome. Plaintiff underwent a carpal tunnel release of both the right and left wrist in September and October of 2004, respectively.  Plaintiff continued to complain of pain resulting from the surgeries.  In fact, the last medical evidence dated during the relevant time period, January 18, 2005,  reports plaintiff continued to complain of an inability to do anything with his hands.  However, at that time Dr. Bise noted plaintiff's scars were well healed and  plaintiff had full range of motion in all digits. Dr. Bise opined plaintiff may never be completely normal but that his carpal tunnel disease did not render plaintiff unable to work. Plaintiff was to follow-up with Dr. Bise in a month. However, there is no evidence to suggest plaintiff returned to Dr. Bise for his follow-up appointment.  There is no evidence that plaintiff sought treatment for this impairment again during the relevant time period.

With regard to plaintiff's foot pain, the record reveals Dr. Pettway noted that an x-ray of the right foot revealed some erosion of the joint of the first metatarsal and had diagnosed plaintiff with arthritis. Plaintiff also reported leg pain to Dr. Griggs who ordered NCV studies of his right leg which were normal. Plaintiff did not complain of foot pain to the consultative examiner in November of 2004.  Dr. Short noted plaintiff was able to heel and toe walk and did not find any

12

limitations regarding plaintiff's ability to sit, stand or walk.  Plaintiff complained of foot pain in December of 2004. At that time, Dr. Pettway noted plaintiff did not have any hot, swollen joints.  Dr. Pettway diagnosed plaintiff with arthritis and tendonitis and recommended that he return for a follow-up appointment in six months.  There is no indication that plaintiff sought treatment for his foot pain until after the ALJ issued his decision denying benefits.  While plaintiff may indeed experience pain and discomfort in his feet, we find substantial evidence supporting the ALJ's decision that plaintiff does not have a disabling foot impairment.

The record further reports plaintiff has been diagnosed with hypertension and that it took some medication adjustments to get his blood pressure under control. However the record shows that when plaintiff took his medication as prescribed his blood pressure was stable. We find substantial evidence to support the ALJ's determination that plaintiff did not have disabling hypertension.  We would note plaintiff also has a history of a myocardial infarction. However during the relevant time period there is no indication that plaintiff experienced any problems associated with his heart condition.  Dr. Schwarz plaintiff's cardiologist noted plaintiff had been asymptomatic for any problems associated with his heart. Dr. Schwarz further reported plaintiff maintained "an excellent level of physical activity without difficulty."

Although plaintiff contends that his failure to seek medical treatment is excused by his inability to afford treatment, plaintiff has put forth no evidence to show that he has sought low-cost medical treatment or been denied treatment, due to his lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). We would also point out that despite reporting an inability to pay for

13

medical care plaintiff was able to continue to purchase and smoke one package of cigarettes per day. As such, we cannot say that his financial situation prevented him from receiving medical treatment.

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. Plaintiff testified that he spends his day watching movies, going to his neighbors or visiting his parents in town every once in a while, and siting by his garden. (Tr. 265). In a Function Report dated January 22, 2005, plaintiff reported he was able to visit his family one to two times a week, take care of his personal needs, prepare simple meals, take out the trash, wash clothes, drive a car, shop for food and necessities, feed his two dogs, read and go outside to sit and  walk around a little. (Tr. 90-97). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain.  *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning his daily

14

activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform light work that did not require rapid or frequent manipulation, the ALJ considered plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluation of a non-examining consultant.

15

A duty of the ALJ when making disability determinations is to resolve conflicts among the various treating and examining physicians." *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir.2002) (internal quotation marks omitted). We note the ALJ addressed Dr. Short's opinion that plaintiff could not engage in any lifting and handling. The ALJ pointed out that Dr. Short evaluated plaintiff one month after he underwent his second carpal tunnel release. The ALJ properly noted that in January of 2005, Dr. Bise, the surgeon that performed the carpal tunnel releases, opined plaintiff was able to return to light-work duties. To be more specific, Dr. Bise opined that plaintiff may never return to a completely normal state but that plaintiff's carpal tunnel disease in no way rendered plaintiff unable to work. We believe the weight the ALJ gave to Dr. Bise's opinion was appropriate and support by the record as a whole.  Based on our above discussion of the medical evidence, plaintiff's failure to seek continued medical treatment and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

After assessing plaintiff's RFC, the ALJ called a vocational expert to testify regarding the availability of jobs plaintiff could perform. We find that the hypothetical questions posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296-96 (8th Cir. 1996).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled.  *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

We note that we reviewed the medical evidence submitted to the Appeals Council after the ALJ rendered his decision. Even with this evidence, we find substantial evidence supports the ALJ's determination. *Riley v. Shalala,* 18 F.3d 619, 622 (8th Cir.1994).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 18th day of January 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

17

AO72A
(Rev. 8/82)